**Charles MORGAN, III, M.D., Plaintiff,**

v.

**N.W. PERMANENTE, P.C., an Oregon professional corporation, et al., Defendants.**

**No. CIV. 97–34–FR.**

United States District Court,
D. Oregon.

Dec. 22, 1997.

Charles H. Habernigg, Portland, OR, for Plaintiff.

Chris Kitchel, Courtney W. Wiswall, Stoel Rives LLP, Portland, OR, for Defendant Northwest Permanente, P.C.

## OPINION

FRYE, District Judge.

The matter before the court is the defendant Northwest Permanente, P.C.'s motion for summary judgment (# 27).

## BACKGROUND

On June 27, 1997, the plaintiff, Charles Morgan III, M.D., filed this action seeking damages against the defendants, Northwest Permanente, P.C. (N.W. Permanente); the Oregon Diversion Program for Health Professionals and its medical director; and the Oregon Board of Medical Examiners and its individual board members. The complaint alleges the following claims for relief: 1) a claim for relief for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12201, *et seq.;* and 2) a claim for relief for alleged violations of Title VII of the Civil Rights Act of 1964 as amended.

## UNDISPUTED FACTS

On October 11, 1984, the Oregon Board of Medical Examiners placed the plaintiff, Dr. Charles Morgan, on ten years probation under terms and conditions which include that he "completely abstain from use of alcoholic beverages." Findings of Fact, Conclusions of Law, Order of Revocation and Terms of Probation, p. 2 (attached as Exhibit 1 to Affidavit of Marci K. Clark).

In June of 1989, N.W. Permanente hired Dr. Morgan as a radiologist subject to the conditions which it places upon every physician that it hires, including that he not consume alcohol on the job or provide treatment while he is impaired by having consumed alcohol.

On July 12, 1990, the Oregon Board of Medical Examiners voted to terminate Dr. Morgan's probation and to reinstate his license to practice medicine.

In October of 1995, Dr. Jerry King, N.W. Permanente's Chief of Radiology, received notice that at separate times three persons had reported that Dr. Morgan smelled as if he had consumed alcohol.

On October 17, 1995, Dr. King told Dr. Morgan about the reports and directed Dr. Morgan to confer with Robert Savery of N.W. Permanente's Physicians' Advocate Resource Program. In response, Dr. Morgan told Dr. King that he had not been drinking before work or at work. Dr. Morgan reminded Dr. King of the onset of his diabetic condition and informed him that his diabetic condition was out of control because of the stress caused by his father's impending death. Dr. Morgan told Dr. King that ketones from his diabetic condition had to be the source of the smell, not alcohol. At that meeting, Dr. King did not offer Dr. Morgan the opportunity to take a breathalyser test or urinalysis testing or to take any other kind of test relating to alcohol in his system. Dr. Morgan did not request a breathalyser test or a urinalysis test or any other kind of test.

On October 18, 1995, Dr. Morgan met with Robert Savery, a coordinator of the Physicians' Advocate Resource Program. Neither Dr. King nor Robert Savery was able to determine whether Dr. Morgan had, in fact, suffered any alcohol-related impairment. Dr. Morgan understood, however, that if he did not participate in the Physicians' Advocate Resource Program, he would be terminated pursuant to policies adopted by N.W. Permanente. Dr. Savery informed Dr. Morgan that he would have to participate in the diversion program of the Oregon Board of Medical Examiners, known as the "Healthcare Professionals Program" or he would be

reported to the Oregon Board of Medical Examiners. The Healthcare Professionals Program, if completed, allows a physician to confront an alcohol dependency problem without being subject to a disciplinary investigation or to sanctions by the Oregon Board of Medical Examiners. O.R.S. 677.645.

In order to avoid potential termination of his position and/or revocation of his medical license, Dr. Morgan agreed to participate in the Healthcare Professionals Program. On October 18, 1995, Dr. Morgan authorized the Physicians' Advocate Resource Program to release all relevant medical records to the Healthcare Professionals Program. Beginning November 26, 1995, N.W. Permanente provided Dr. Morgan with a leave of absence in order for him to complete the assessment and treatment required by the Healthcare Professionals Program. On February 6, 1996, Dr. Morgan signed an agreement to participate in the Healthcare Professionals Program.

As a participant in the Healthcare Professionals Program, Dr. Morgan was required to complete a residential program immediately, and he was barred from practicing medicine until he completed an approved treatment program.

N.W. Permanente has no administrative, decision-making, or supervisory authority over the Healthcare Professionals Program. The Healthcare Professionals Program and the Oregon Board of Medical Examiners have not provided Dr. Morgan with a work release. Dr. Morgan has not provided N.W. Permanente with a work release.

In July of 1996, Dr. Morgan completed an application for total disability benefits, indicating that as of December 5, 1995 he was totally disabled.

On August 7, 1997, the Oregon Board of Medical Examiners and Dr. Morgan signed a Stipulated Final Order Granting Request for Voluntary Limitation which resolves the matter between Dr. Morgan and the Oregon Board of Medical Examiners. This final order provides that Dr. Morgan "will not practice in any environment where he has direct patient contact or responsibilities including diagnostic radiology." Stipulated Final Order, p. 3, ¶ 4.1 (attached as Exhibit 1 to Affidavit of Courtney W. Wiswall).

## CONTENTIONS OF N.W. PERMANENTE

N.W. Permanente contends that as a matter of law it did not discriminate against Dr. Morgan on the basis of a disability. N.W. Permanente contends that it handled the information it had that Dr. Morgan smelled as if he had consumed alcohol on three separate occasions at work as it would have handled any other employee's information and as required by the mandatory reporting requirements of O.R.S. 677.415. N.W. Permanente contends that Dr. Morgan has not identified any accommodation that he requested and did not receive, and that it did no more than satisfy its statutory duty to the public and its patients by not accepting Dr. Morgan's explanation without question.

N.W. Permanente contends that no reasonable accommodation would have enabled Dr. Morgan to continue in his position, and that it would have been a violation of the mandate of the Oregon Board of Medical Examiners for N.W. Permanente to take any other action. N.W. Permanente contends that Dr. Morgan has been prohibited by the Healthcare Professionals Program and the Oregon Board of Medical Examiners from performing the duties of his job with N.W. Permanente, and that no adverse action was taken by N.W. Permanente that was not required by law.

## CONTENTIONS OF DR. MORGAN

Dr. Charles Morgan contends that there is a material issue of fact for trial as to whether N.W. Permanente discriminated against him on the basis of his diabetes and his former alcoholism by failing to provide reasonable accommodation as requested. Dr. Morgan contends that N.W. Permanente was required to further examine the reports of the smell of alcohol prior to taking any action against him. Dr. Morgan explains that he "had for several years in fact successfully reintroduced the moderate, controlled use of alcohol into his life" (Plaintiff's Response to Motion for Summary Judgment of Defendant Northwest Permanente, P.C., p. 10), and that

to require him to go to the Healthcare Professionals Program would be the basis for an immediate finding that he was impaired.

Dr. Morgan contends that a jury should decide whether or not N.W. Permanente discriminated against him by denying his request to withhold reporting because ketones from his diabetic condition and not alcohol were the source of the smell that mimics the smell of alcohol and by denying his request that N.W. Permanente itself establish and monitor him by breathalyser testing, blood testing, or otherwise in order to establish that he was not drinking.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact.

Once the initial burden of the moving party is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must make a sufficient showing on all essential elements of the case with respect to which the non-moving party has the burden of proof. *Id.*

The decision faced by the court is essentially the same decision faced by a court on a motion for a directed verdict—that is, whether the evidence on the motion for summary judgment presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If reasonable minds could differ as to the conclusions drawn from the evidence in the record, the motion for summary judgment should be denied. *Id.*

## ANALYSIS

O.R.S. 677.415(2) provides, in relevant part:

> Any health care facility licensed under ORS 441.015 to 441.087 and 441.820, [and] any licensee licensed by the [Board of Medical Examiners] ... shall ... report to the [Board of Medical Examiners] any information such licensee [or entity] may have which appears to show that a licensee is or may be medically incompetent ... or is or may be an impaired physician unable safely to engage in the practice of medicine
> ....

The Oregon legislature further created the Healthcare Professionals Program as an alternative for physicians subject to a required report to the Oregon Board of Medical Examiners. *See* O.R.S. 677.415(2); O.R.S. 677.645.

It is undisputed that in October of 1995, N.W. Permanente's Chief of Radiology received complaints from three people about three separate incidents in which Dr. Morgan smelled as if he had been drinking alcohol. Dr. Morgan was then directed by N.W. Permanente to report to the Physicians' Advocate Resource program coordinator and subsequently to the Healthcare Professionals Program. As a matter of law, N.W. Permanente did not violate the Americans with Disabilities Act or Title VII of the Civil Rights Act by requiring that these actions be taken by Dr. Morgan to comply with O.R.S. 677.415(2).

After Dr. Morgan agreed to participate in the Healthcare Professionals Program, the State of Oregon, and not N.W. Permanente, prevented Dr. Morgan from continuing in his position with N.W. Permanente. The Healthcare Professionals Program barred Dr. Morgan from practicing medicine until he completed an approved treatment program. There is no evidence in this record that N.W. Permanente failed to reasonably accommodate Dr. Morgan in any manner which would have complied with its obligations under the laws of the State of Oregon.

## CONCLUSION

Defendant N.W. Permanente's motion for summary judgment (# 27) is granted.